JENNINGS, APPELLANT, *v.* THE TOLEDO EDISON CO., APPELLEE.

(Decided March 21, 1938.)

*Mr. Harry P. Hood, Messrs. Wardlaw, Gertner & Armstrong* and *Mr. Joseph G. Gluck,* for appellant.

*Messrs. Welles, Kelsey, Cobourn & Harrington* and *Mr. Harley A. Watkins,* for appellee.

LLOYD, J. Clarence H. Jennings, who died on January 10, 1934, had for several years theretofore been an employee of The Toledo Edison Company. The Toledo Edison Company, having complied with its provisions, was a self-insurer within the purview of the Workmen's Compensation Law. The widow of decedent, in behalf of herself and children as dependents

of the deceased, filed her application for compensation with the Industrial Commission of Ohio. This application being denied, she filed an application for a rehearing of her claim, which was also denied. Thereupon she appealed therefrom to the Court of Common Pleas where, upon trial, that court directed the jury to return a verdict for the appellee, The Toledo Edison Company. Motion for a new trial having been filed and overruled, judgment was entered on the verdict. From this judgment, Chloe Jennings appeals to this court on questions of law.

Decedent was employed by appellee as a laborer. His work included the unloading of coal at the power plant of the appellee. For reserve purposes, appellee maintains storage piles of several thousand tons of coal from which, when needed, coal is taken in hopper cars, so-called, and dumped into what witnesses call a "dry pocket" from where it is taken for consumption in the plant. When the coal in these storage piles becomes ablaze from combustion, water is poured thereon. "It puts out the fire so it won't burn but it doesn't kill the gas and sulphur smell and taste of it; that is still there until consumed." After the coal from a storage pile has been conveyed to and dumped into the "dry pocket" some of it remains in the car and has to be removed therefrom. This was what Jennings was doing on January 4th. The car in which Jennings was working on the day in question, shoveling out the coal which had not dropped through the hopper pockets in the bottom of the car into the dry pocket, had a capacity of about 70 tons. It was open and uncovered at the top and was about eight feet in depth. From the still hot coal in the car, and from that dropped through the hopper pockets into the dry pocket, fumes and gas arose, which were inhaled by Jennings and another employee then engaged in removing from the car the hot coal which had not fallen therefrom through the

open hopper pockets. The work was done in the open air and, as stated, the top of the hopper car was entirely unenclosed. This work was not an every-day necessity, but was required only when the coal was not available from cars arriving directly from the mines—perhaps a fourth of the time. But this was and had been a part of Jennings' regular employment when occasion therefor did arise, and was always done as Jennings and his fellow workmen were doing it on January 4th and the three days preceding. The evidence does not disclose what other work he did when not so employed.

For some time prior to January 4th, Jennings was suffering from a severe cold and upon going home on that day after his day's work, became quite ill, so much so that a physician was called on the following morning. Upon further examination in the afternoon, the physician diagnosed the condition as "lobar pneumonia in the right upper lung." This was the cause of his death on the following January 10th. It is contended that the death of Jennings was accidental within the meaning of the Workmen's Compensation Law in that it was "proximately caused by specific inhalations of noxious gas and fumes at a specific time, which were greater in intensity than normal, such exposure and inhalations were definite as to time and place of occurrence and decedent was not constantly exposed and subjected to such gases and fumes, which inhalations aggravated a preexisting condition of irritation and proximately produced the malady causing decedent's death."

As it appears to us, the evidence fails to disclose the occurrence of an accident or specific injury within the meaning of the Workmen's Compensation Law. If what Jennings was doing had anything to do with his subsequent condition, it arose from the nature of his employment—work that he had been employed to do

and which he had been doing in exactly the same way and under the same conditions during several years preceding. It was a part of his regular employment and the fact that when not thus engaged he also did other work would not exclude it from that category. It is not and can not be claimed that anything unusual or different happened in the doing of the particular work on January 4th to differentiate it from the way it had been done on the three preceding days or during any of the times during his employment when it became necessary in the unloading of coal cars. Jennings was engaged in his usual employment, doing his work in the usual way. The manner of its performance was the usual, customary and incidental method inherent in his employment. The gases and fumes as an irritating cause, if it were so, of his pneumonic condition, were incidental, not accidental, not the result of physical injury within the meaning and contemplation of the Workmen's Compensation Law.

The judgment of the Court of Common Pleas is therefore affirmed and the cause remanded thereto for execution for costs.

*Judgment affirmed.*

CARPENTER and OVERMYER, JJ., concur.